2023 IL App (2d) 220086
No. 2-22-0086
Opinion filed May 24, 2023

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| STACY GOODMAN, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18-L-355 |
| | ) | |
| DRU GOODMAN, | ) | Honorable |
| | ) | Mitchell L. Hoffman and David P. Brodsky, |
| Defendant-Appellee. | ) | Judges, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1    During the parties' divorce proceedings, the plaintiff, Stacy Goodman, discovered that the defendant, Dru Goodman, had hired investigators to conduct surveillance of her for over three years. After the conclusion of the divorce proceedings, Stacy filed a complaint against Dru, alleging, in relevant part, a claim for intentional infliction of emotional distress and three claims related to various forms of abuse under the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/101 *et seq.* (West 2018)). The trial court dismissed the abuse claims based on the Act, finding that the Act did not provide a private right of action. It later granted summary judgment in favor of Dru on Stacy's claim for intentional infliction of emotional distress, finding it barred by the absolute litigation privilege. Stacy appeals from these orders. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3      We took the following facts from the filed record and an unpublished order related to Stacy's request for an extension of an order of protection entered against Dru. See *In re Marriage of Goodman*, 2020 IL App (2d) 200289-U (*Goodman II*). The parties were married in 1996, and three children were born of the marriage. The record indicates that, in August 2013, Stacy told Dru she wanted a divorce and started sleeping in his home office rather than in their bedroom. In November 2013, Stacy filed a petition for dissolution of marriage. On July 26, 2017, the trial court entered a judgment for dissolution of marriage.

¶ 4      In 2013, during the pendency of the divorce proceedings, Stacy filed an emergency motion for an order of protection. The trial court subsequently entered an agreed order, which required Dru to transfer funds for Stacy's purchase of a new residence and provided that Stacy's emergency petition for an order of protection had been withdrawn. A separate order restrained each party from harassing, intimidating, or interfering with the other's liberty.

¶ 5      On March 22, 2017, Stacy filed a verified petition for an order of protection against Dru pursuant to the Act. That petition was docketed in the trial court as case No. 17-OP-486 and was consolidated with the dissolution action. In an affidavit attached to the petition, Stacy asserted that when she resided in the marital home, Dru "maintained constant, 24-hour surveillance" of her, using cameras placed throughout the interior and exterior of the residence. Stacy further stated that she suspected Dru had hired a private investigator to follow her soon after she filed for divorce. Stacy stated that her suspicion was confirmed on December 31, 2015, when her boyfriend, Matthew Kornick, looked out the window of her home and observed a camera flash come from a car parked nearby. Stacy obtained the license plate number and filed a police report. She later learned that the car's owner was Bing R. Apitz, a private investigator.

¶ 6    After the incident with Apitz, Stacy's attorneys issued discovery to Dru. In response, Stacy learned that, between September 2013 and April 2016, Dru had someone follow, videotape, and photograph her for approximately 12 hours per day at home, on vacation, and in public places. Stacy also discovered that Dru had spent more than $1.295 million to surveil her. Stacy stated that Dru's constant surveillance had caused her emotional distress and anxiety. Stacy also stated that she continued to fear that someone was following and recording her because, on February 27, 2017, Dru disclosed that another private investigator, Robert Scigalski, had provided services to him.

¶ 7    At a hearing on the petition for an order of protection, Scigalski testified that he was a private investigator, and Dru's attorney hired him to investigate whether Stacy was cohabitating with her boyfriend, Matthew Kornick. Scigalski's investigation lasted from mid-February to the end of March 2017. He conducted all surveillance within the bounds of the law, and, at times, it lasted 18 hours per day.

¶ 8    Grady Vogt testified that he was employed by DDG, the same corporation that employed Dru. Dru was his boss. In 2013, Dru told him that he was having family problems, was receiving threatening phone calls, and was concerned for the well-being of his children. In August 2013, due to the parties' marital problems, Vogt hired private investigator Bob Arden without Dru's knowledge and instructed Arden to investigate Stacy and to look out for the safety of Dru and his children. Vogt testified that, within a couple of weeks, Arden discovered that Stacy was consistently with Kornick. At that point, the purpose of the surveillance changed from ensuring safety to investigating adultery and possible cohabitation. Dru did not know about Arden until about two or three months after Vogt hired him. Vogt hired an attorney, John Purdy, to oversee Arden.

¶ 9 Purdy testified that Vogt engaged him on behalf of DDG to review Arden's reports "to make sure that there were no problems for [DDG] and its officers." Once Purdy received and reviewed the reports, he would send them to Vogt. The record contains an e-mail written by Purdy on September 13, 2013, to Latressa Stahlberg. In that e-mail, Purdy wrote as follows:

> "[Vogt] called me early this afternoon and told me that the owner of DDG, who lives in northern Cook or Lake County[,] is in the middle of a divorce and wishes to have a private investigator investigate his estranged wife. The name of the investigator is Robert Arden and the name of the firm is Arkus Investigators, Inc. he [*sic*] wishes us the [*sic*] high [*sic*] the investigator to protect his findings from discovery."

¶ 10 Dru testified that he did not know about Arden until December 2013 or January 2014. He believed Vogt initially hired Arden for the safety of Dru and his children. Thereafter, the investigation continued to prove adultery. In June 2016, the surveillance focused on proving conjugal cohabitation. Dru testified that Arden's investigation lasted until August 2016, but Dru's divorce counsel hired another investigator and that investigation lasted until around March 2017. The record indicates that, starting in January 2014, Arden's reports were being forwarded to Dru's divorce attorneys.

¶ 11 Stacy testified consistently with the allegations in her petition. She stated that the surveillance made her paranoid, and it was often difficult to sleep at night. She acknowledged on cross-examination that she began seeing a therapist long before the divorce proceedings commenced.

¶ 12 At the conclusion of the evidence, the trial court (Judge Joseph V. Salvi) entered a two-year plenary order of protection against Dru. The trial court found that the surveillance was obsessive and was commenced initially to show that Stacy was having an affair. Ultimately,

however, the surveillance was transformed into a means for determining whether or not Stacy was cohabitating. The trial court noted that anyone who would spend $1.5 million for private investigators was obsessed and would cause any reasonable subject of such investigation to be anxious, afraid, angry, and upset. The trial court found that the extent of the investigation was "not necessary to accomplish any purpose" and "was completely and utterly inappropriate and warrants a plenary order of protection."

¶ 13    In the direct appeal from the dissolution proceeding, Dru argued that the plenary order of protection entered by the trial court was against the manifest weight of the evidence. We affirmed the trial court's decision and held that a finding opposite to the trial court's was not clearly apparent. See *In re Marriage of Goodman*, 2019 IL App (2d) 170621-U, ¶ 167 (*Goodman I*). We stated, "even if the surveillance was partially directed at gathering evidence of cohabitation, the trial court could have concluded that the duration and scope of the surveillance exceeded what was reasonably necessary to gather evidence of cohabitation." *Id.* We explained that our conclusion did not bar a party to a divorce action from engaging a private investigator to gather relevant evidence. *Id.* ¶ 169. "Rather, we simply [held] that the trial court's determination that the surveillance at issue did not serve a purpose that [was] reasonable under the circumstances in light of its duration and scope was not against the manifest weight of the evidence." *Id.* Finally, we determined that the trial court's finding that the surveillance caused Stacy emotional distress was also not against the manifest weight of the evidence. *Id.* ¶ 171. Thus, we affirmed the trial court's decision to enter the plenary order of protection against Dru. *Id.*

¶ 14    When the plenary order of protection was set to expire, Stacy filed a motion to extend the order of protection. At a hearing on the motion to extend, before trial court Judge Janelle K. Christensen, Dru testified that he did not know if he would hire a private investigator if the order

of protection was lifted. He stated that he would make that decision based on advice from legal counsel on whether to investigate cohabitation. Any investigation would be "more limited" and restricted to the issue of cohabitation. Stacy testified that she wanted the extension because she did not want to live in fear that someone was constantly following her. The thought of having the order of protection lifted had caused her anxiety and made it difficult to sleep. Following argument, the trial court granted the motion to extend. The trial court stated that it believed that Dru would immediately begin surveilling Stacy if the order of protection was lifted and that the surveillance would cause Stacy emotional distress.

¶ 15    In *Goodman II*, we reversed the trial court's judgment, holding that the trial court's decision to grant the extension on the plenary order of protection was against the manifest weight of the evidence. We noted that Stacy was required to establish " 'good cause' " by a preponderance of the evidence to extend the order of protection. *Goodman II*, 2020 IL App (2d) 200289-U, ¶ 46 (quoting 750 ILCS 60/220(e) (West 2018)). We held that there was no evidence to support a finding of good cause, such as continued hostility or harassment. *Id.* Although Dru testified he may surveil Stacy again to investigate cohabitation, we held that this did not establish good cause. *Id.* ¶ 47. We noted that Illinois courts regularly review evidence from private investigators in cohabitation cases and held that there was no reason to bar a party from conducting surveillance to gather evidence of cohabitation so long as it was within the bounds of reason. *Id.* Further, there was no evidence to substantiate the trial court's finding that any future surveillance of Stacy by Dru would cross the line to harassment, as Dru testified that he would only conduct surveillance based on the advice of counsel and he had demonstrated that he would comply with court directives, as evidenced by his compliance with the original order of protection. *Id.* ¶ 48.

¶ 16     On March 21, 2019, Stacy filed an amended five-count complaint related to Dru's past surveillance of her. Count I stated a claim for intrusion upon seclusion, alleging that Dru surveilled Stacy within the marital home and outside the marital home. Count II asserted a claim for intentional infliction of emotional distress, alleging that the surveillance had caused Stacy anguish, humiliation, depression, and sleep loss, for which she had to seek counseling. Counts III, IV, and V asserted private causes of action under the Act for negligent abuse, willful and wanton negligent abuse, and willful and wanton intentional abuse. Stacy alleged that the many years of surveillance constituted abuse and harassment under the Act and that the Act created an implied private right of action.

¶ 17     Dru filed a motion to dismiss the amended complaint under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)), for failure to state a cause of action. The trial court (Judge Mitchell Hoffman) largely denied the motion. As to the claim for intrusion upon seclusion, the trial court denied the motion regarding the allegations concerning surveillance within the marital home but granted dismissal of the allegations related to surveillance outside the marital home. The trial court also addressed Dru's argument that the absolute litigation privilege was a basis to dismiss the claim for intentional infliction of emotional distress. The trial court found that the allegations of the complaint did not support using the litigation privilege as an affirmative defense, as there were questions of fact that could not be resolved within a section 2-615 dismissal proceeding. Finally, in relation to counts III, IV, and V of the amended complaint, the trial court found that a private right of action under the Act was consistent with the underlying purpose of the statute and provided Stacy a remedy for Dru's repeated harassment of her.

¶ 18     Dru filed a motion to reconsider the denial of his motion to dismiss with respect to the claims under the Act, counts III through V. Dru argued that there was no private right of action

because the Act itself provided sufficient remedies for Dru's alleged violations of the Act. The trial court denied the motion to reconsider, finding that a private cause of action was necessary to allow a full, complete, and adequate remedy for Dru's violations of the Act.

¶ 19    Dru filed a second motion to reconsider, which the trial court granted. The trial court found that, upon reconsideration, a private right of action under the Act was unnecessary because the Act provided appropriate remedies for violations of its provisions. Further, noneconomic damages were available to Stacy in her claim for intentional infliction of emotional distress. The trial court thus granted the dismissal of counts III, IV, and V with prejudice.

¶ 20    Thereafter, the parties filed cross-motions for summary judgment on count II of the amended complaint, the claim for intentional infliction of emotional distress, and as to the affirmative defense of the absolute litigation privilege. Dru also requested summary judgment on count I, for intrusion upon seclusion related to surveillance within the marital home, on the basis that a two-year statute of limitations barred it. The trial court (Judge David Brodsky) denied the cross-motions for summary judgment on Stacy's claim for intentional infliction of emotional distress, finding that there was a question of fact for the jury as to whether Dru intended his actions to cause emotional distress. The trial court also denied summary judgment on the absolute litigation privilege. The trial court found that even if the surveillance was excessive, unnecessary, and harassing, that did not mean it did not pertain to the divorce litigation. The trial court noted that the surveillance was overseen by Dru's attorneys, who certainly knew about the law regarding cohabitation, and it was subject to discovery. The trial court also found that there was evidence that at least some of the surveillance pertained to cohabitation and that whether the privilege applied was a question for the trier of fact. Finally, the trial court granted summary judgment in

favor of Dru on count I, Stacy's claim for intrusion upon seclusion, finding that the statute of limitations barred it.

¶ 21    Dru filed a motion to reconsider the denial of summary judgment on Stacy's claim for intentional infliction of emotional distress. Following argument on February 16, 2022, the trial court granted the motion to reconsider and entered summary judgment in favor of Dru on count II. The trial court stated that it had erred in its previous ruling when it found that the application of the absolute litigation privilege was a question of fact for the jury. The trial court found that the application of the privilege must be decided by the trial court as a matter of law. The trial court concluded that the privilege barred Stacy's claim because the overwhelming weight of the evidence demonstrated that the surveillance and its disclosure were related to future anticipated or pending issues in the parties' divorce proceedings. This timely appeal followed.

¶ 22                              II. ANALYSIS

¶ 23    On appeal, Stacy argues that the trial court erred in finding that the absolute litigation privilege barred her claim for intentional infliction of emotional distress. Alternatively, Stacy argues that, if this court holds that the privilege applies, then the trial court erred in finding no implied private right of action under the Act and in dismissing counts III, IV, and V of her amended complaint.

¶ 24    When parties file cross-motions for summary judgment, they agree that there are only questions of law to decide, and they invite the court to decide the issue based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Summary judgment should be granted where the pleadings, depositions, and admissions on file—together with any affidavits—show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. 735

ILCS 5/2-1005(c) (West 2020). We review *de novo* a trial court's ruling on cross-motions for summary judgment. *Schroeder v. Sullivan*, 2018 IL App (1st) 163210, ¶ 25.

¶ 25      The absolute litigation privilege is an affirmative defense. *Bedin v. Northwestern Memorial Hospital*, 2021 IL App (1st) 190723, ¶ 39. "The absolute-litigation privilege immunizes certain statements and conduct by attorneys in the course of litigation." *Doe v. Williams McCarthy, LLP*, 2017 IL App (2d) 160860, ¶ 19. The purpose of the privilege is to allow attorneys " 'the utmost freedom in their efforts to secure justice for their clients.' " *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 701-02 (2000) (quoting Restatement (Second) of Torts § 586 cmt. *a*, at 247 (1977)). The privilege is based on section 586 of the Restatement (Second) of Torts, which provides that an attorney is "absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts § 586 (1977). Under section 587 of the Restatement (Second) of Torts, a private party to the litigation "enjoys the same privilege." (Internal quotation marks omitted.) *Bedin*, 2021 IL App (1st) 190723, ¶ 39 (citing Restatement (Second) of Torts § 587 (1977)).

¶ 26      For the litigation privilege to apply, " 'the communication must pertain to proposed or pending litigation.' " *Id.* ¶ 40 (quoting *Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶ 19). However, the pertinency requirement is not strictly construed, and the privilege can be applied to statements or actions related to the subject controversy *and* those not confined to specific issues related to the litigation. *Id.* Any doubts related to pertinency must be resolved "in favor of finding the communication pertinent to the litigation." *Doe*, 2017 IL App (2d) 160860, ¶ 19. When the privilege applies, "no liability will attach even at the expense of

uncompensated harm to the plaintiff." *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 25. The privilege applies to communications made before, during, and after litigation, regardless of the defendant's motive or the unreasonableness of his conduct. *Bedin*, 2021 IL App (1st) 190723, ¶ 40. The determination of whether the absolute litigation privilege applies is reviewed *de novo*. *Id.*

¶ 27     Based on the above principles, we hold that the trial court did not err in finding count II barred by the absolute litigation privilege. Count II stated a claim for intentional infliction of emotional distress.  The scope of conduct shielded by the privilege extends beyond defamatory communications, and the privilege applies to claims for intentional infliction of emotional distress. See *O'Callaghan*, 2015 IL App (1st) 142152, ¶¶ 26-27. Regarding whether the surveillance was pertinent to pending or proposed litigation, it is undisputed that the surveillance commenced after Stacy informed Dru in August 2013 that she wanted a divorce. Vogt testified that, in August 2013, he hired a private investigator to investigate Stacy and look out for the safety of Dru and his children. After about a week or two of surveillance, Vogt discovered that Stacy was constantly with another man. Vogt testified that, at that point, the purpose of the surveillance became related to adultery and cohabitation. Purdy's September 2013 e-mail also indicated that the surveillance was related to divorce proceedings. It is well settled that Illinois courts regularly review evidence from private investigators in cohabitation cases (*Goodman II*, 2020 IL App (2d) 200289-U, ¶ 47 (citing cases)), and adultery may be proven when there is conjugal cohabitation before a dissolution of marriage. Accordingly, the surveillance was clearly in the course of, and in furtherance of, anticipated and pending divorce proceedings. As the surveillance was pertinent to the divorce litigation, the privilege applies.

¶ 28    Stacy makes several arguments as to why application of the absolute litigation privilege is improper. Stacy argues that the surveillance was not pertinent to the divorce litigation because the surveillance commenced two months before she filed her petition for dissolution. This argument is unavailing as the privilege applies to conduct before, during, and after litigation. *Bedin*, 2021 IL App (1st) 190723, ¶ 40.

¶ 29    At oral argument, Stacy asserted that the privilege was not applicable because Dru originally hired the investigator, controlled the surveillance, and testified that until June 2016 the purpose of the surveillance was not about proving cohabitation. This argument is unpersuasive. The record shows that Vogt initiated the surveillance and that Dru did not find out about it until December 2013 or January 2014. Further, it is improper to cherry-pick favorable evidence while ignoring other relevant evidence. While Dru testified that the surveillance was not about cohabitation until 2016, Vogt, who initiated the surveillance, testified that, within a couple of weeks, the purpose of the surveillance was to prove adultery and cohabitation. Purdy's September 2013 e-mail supported Vogt's testimony, and the record shows that as of January 2014, the surveillance reports were being sent to Dru's divorce attorneys. Merely because Dru first became aware of the legal term "cohabitation" in June 2016 does not overcome the other evidence that clearly establishes that the surveillance was pertinent to the divorce litigation. Moreover, even if Dru did not originally intend to use the surveillance evidence to prove cohabitation, this would not establish that it did not pertain to the anticipated divorce proceedings. The privilege applies " 'even where the [conduct] is not confined to specific issues related to the litigation.' " *Id.* (quoting *Malevitis v. Friedman*, 323 Ill. App. 3d 1129, 1131 (2001)).

¶ 30    Next, Stacy argues that the surveillance between September 2013 and June 2016 did not pertain to the divorce litigation because none of that surveillance was ever presented in the divorce

proceedings to prove cohabitation. Further, Stacy notes that, in *Goodman I*, the trial court found that the surveillance between 2013 and 2016 was " 'an obsessive pattern of surveillance of his wife that was precipitated, not by the trying [*sic*] to draw a legal conclusion as to whether she was cohabitating, but initially to show that she was having an affair' " and that the surveillance was " 'not necessary to accomplish a purpose.' " *Goodman I*, 2019 IL App (2d) 170621-U, ¶ 160. We affirmed, holding that the trial court's determination that the surveillance did not serve a reasonable purpose under the circumstances was not against the manifest weight of the evidence. *Id.* ¶ 169.

¶ 31    This argument is also unpersuasive because it is well settled that the absolute litigation privilege applies regardless of Dru's motives and whether his conduct was reasonable. *Bedin*, 2021 IL App (1st) 190723, ¶ 40. Further, the surveillance evidence did not have to be used at trial to be pertinent to the litigation. Rather, the surveillance at issue only needed to bear some relation to the litigation. *Id.* While the surveillance evidence was not ultimately used in the divorce proceedings to show cohabitation, it could have been so used or it could have been used for impeachment purposes had Stacy testified inconsistently with the surveillance. Dru and his attorneys could not have known whether the surveillance would result in useful evidence until after surveillance was conducted and the divorce proceedings were further advanced. For example, while cohabitation would be relevant to periodic maintenance, it would not have been relevant had Stacy requested maintenance in gross. Accordingly, we hold that the surveillance did bear some relation to the divorce proceedings and that the absolute litigation privilege barred Stacy's claim for intentional infliction of emotional distress.

¶ 32    Stacy's next contention on appeal is that the trial court erred in finding that there was no implied private right of action under the Act and in granting Dru's section 2-615 motion to dismiss counts III, IV, and V of her amended complaint. "The standard that must be met for a court to

imply a private right of action in a statute is quite high." *Channon v. Westward Management, Inc.*, 2022 IL 128040, ¶ 33. The implication of a private right of action is appropriate only if (1) the plaintiff is a member of the class for whose benefit the Act was enacted, (2) providing a private right of action is consistent with the underlying purpose of the Act, (3) the plaintiff's injury is one the Act was designed to prevent, and (4) providing a private right of action is necessary to provide an adequate remedy for violations of the Act. *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 391 (1982). As counts III, IV, and V were dismissed pursuant to section 2-615 of the Code, our review is *de novo*. *Luise, Inc. v. Village of Skokie*, 335 Ill. App. 3d 672, 685 (2002). Moreover, whether a statute creates an implied private right of action is an issue of statutory interpretation and, thus, presents a question of law that we review *de novo*. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34 (2004). In construing a statute, our principal objective is to ascertain and effectuate the underlying legislative intent. The best way to accomplish that goal is to apply the plain language of the statute. *Id.* at 34-35.

¶ 33     In the present case, there is no dispute that Stacy was a member of the class for whose benefit the statute was enacted and that her injury was of the type that the Act was designed to prevent. Further, a private right of action is consistent with the underlying purpose of the Act. As stated in the Act, two of the underlying purposes are as follows:

> "(3) Recognize that the legal system has ineffectively dealt with family violence in the past, allowing abusers to escape effective prosecution or financial liability, and has not adequately acknowledged the criminal nature of domestic violence; ***
>
> * * *
>
> (6) Expand the civil and criminal remedies for victims of domestic violence; ***."
>
> 750 ILCS 60/102 (West 2018).

¶ 34    Nonetheless, consideration of the fourth factor does not support the implication of a private cause of action in this case. "[O]ur supreme court has found an implied private right of action under a statute only in cases where the statute would be ineffective, as a practical matter, unless such an action were implied." *Davis v. Kewanee Hospital*, 2014 IL App (2d) 130304, ¶ 38 (citing *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 464 (1999)); see also *Metzger*, 209 Ill. 2d at 41 (adequacy of a statute's enforcement scheme does not turn on the claimed right to compensation for injuries but instead focuses on whether "adequate remedies are provided to make compliance with the [statute] likely"). Here, the Act provides many remedies in section 214 of the Act. Section 214(b) of the Act provides that the "remedies listed in this subsection shall be in addition to other civil or criminal remedies available to petitioner." 750 ILCS 60/214(b) (West 2018). Possible remedies include prohibition of abuse, stay-away orders, orders to appear in court, orders to pay for losses, and injunctive relief. *Id.* An order for payment of losses includes, "but [is not] limited to, medical expenses, lost earnings or other support, repair or replacement of property damaged or taken, reasonable attorney's fees, courts costs and moving or other travel expenses." *Id.* § 214(b)(13). Further, violation of an order of protection can be punished as a criminal offense or enforced through contempt procedures, and penalties may include incarceration, payment of restitution, a fine, payment of attorney fees and costs, or community service. *Id.* § 223. Because the Act provides for issuing orders of protection and the remedies for violations of an order of protection, it is effective on its own. Therefore, an implied private right of action is not necessary to achieve the Act's purposes. See *Kagan v. Waldheim Cemetery Co.*, 2016 IL App (1st) 131274, ¶ 46 (no implied private right of action where statute was "replete with sanctions and remedies for violations of its provisions").

¶ 35    Moreover, the Act's plain language indicates that the legislature did not intend to imply a private right of action. Section 214 states that the remedies provided were in addition to other civil or criminal remedies available to Stacy. This plain language indicates the legislature's awareness that remedies were available through other causes of action not associated with the Act. Here, Stacy had civil remedies available under common law, such as her claim for intentional infliction of emotional distress. See *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 393-96 (1999) (no implied private right of action under the Lead Poisoning Prevention Act (410 ILCS 45/1 *et seq.* (West 1996)) since, in addition to several remedies provided by the Act, the common law provided an adequate remedy in the form of a negligence action). Stacy argues that implying a private right of action is necessary to provide an adequate remedy because the absolute litigation privilege bars her claim for intentional infliction of emotional distress. Merely because Dru has a successful affirmative defense to Stacy's claim for intentional infliction of emotional distress is not a sufficient basis to find that the legislature intended to imply a private right of action. *1541 North Bosworth Condominium Ass'n v. Hanna Architects, Inc.*, 2021 IL App (1st) 200594, ¶ 56 ("the most recent decisions of our supreme court [related to an implied private right of action] have made it clear that the focus should be on whether an implied right of action is necessary to enforce the provisions of the statute, not on whether a particular plaintiff could recover from a particular defendant" (emphasis omitted)).

¶ 36                                III. CONCLUSION

¶ 37    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 38    Affirmed.

*Goodman v. Goodman*, **2023 IL App (2d) 220086**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 18-L-355; the Hon. Mitchell L. Hoffman and the Hon. David P. Brodsky, Judges, presiding. |
| **Attorneys for Appellant:** | Daniel F. Konicek, Amanda J. Hamilton, and Peter L. LeGrand, of Konicek & Dillon, P.C., of Geneva, for appellant. |
| **Attorneys for Appellee:** | Neil M. Rosenbaum and Damon E. Dunn, of Funkhouser Vegosen Liebman & Dunn Ltd., of Chicago, for appellee. |