2025 IL App (2d) 250023
No. 2-25-0023
Opinion filed December 8, 2025

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| AMERICAN BACKFLOW AND FIRE PREVENTION, INC., and DAN HARBUT, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | No. 24-CH-14 |
| WILLIAM J. HINCKS; SPRINKLER FITTERS AND APPRENTICES UNION, LOCAL 281 U.A.; JENNIFER MACDONALD; JADEN J. LEKER; FRANK WALCZAK; WILLIAM P. CALLINAN; and JOHNSON & KROL, LLC, | ) ) ) ) ) ) ) ) | Honorable Janelle K. Christensen, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Kennedy and Justice McLaren concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs American Backflow and Fire Prevention, Inc. (American Backflow) and Dan Harbut sued defendants William Hincks; Sprinkler Fitters and Apprentices Union, Local 281, U.A. (Local 281); Jaden Leker; Jennifer MacDonald; Frank Walczak; William Callinan; and Johnson & Krol, LLC (Johnson & Krol) for their allegedly defamatory and disparaging statements to the American Society of Sanitary Engineering (ASSE), the National Institute for Certification in Engineering Technologies (NICET), and the Office of the Illinois State Fire Marshal (Fire

Marshal) concerning plaintiffs' qualifications for fire sprinkler maintenance certification by ASSE and NICET. The trial court dismissed plaintiffs' claims because they were barred by the absolute litigation privilege for defamation claims, as the alleged statements were made in connection with quasi-judicial proceedings before ASSE and NICET. Plaintiffs appeal. We affirm.

¶ 2                                I. BACKGROUND

¶ 3     American Backflow was a corporation engaged in the sale of fire protection and inspection services. Harbut was its owner and an employee. He founded American Backflow in 2013 after over 29 years in the industry. Local 281 was a legally recognized union representing individuals who install, inspect, test, repair, and maintain all types of fire extinguishing systems. Hincks was an executive of, and organizer for, Local 281. Leker and Walczak were members of Local 281. MacDonald was a former American Backflow employee. Johnson & Krol was a law firm, and defendant Callinan was an attorney at the firm. Callinan represented Local 281.

¶ 4     In 2021, Hincks and Local 281 began a union organization campaign at American Backflow. Plaintiffs alleged that, in May 2021, Hincks stated that "[w]e have been after American Backflow for a long time. We want to put them out of business." Additionally, plaintiffs alleged that a business manager for Plumbers Local Union 130 U.A. told American Backflow employees that "I've been after this scumbag [Harbut] and we're gonna [*sic*] put him out of business."

¶ 5     In 2022, American Backflow paid for six employees, including Harbut, to seek fire sprinkler technician certification from ASSE (ASSE 15010 certification). Harbut and three employees passed the exam and received their ASSE 15010 certifications. American Backflow continued to pay the employees' full wages while they sought their 15010 certifications. In December 2022, plaintiffs learned that complaints were filed against the employees that received the ASSE certification. ASSE ultimately revoked the certifications of three employees in March

2023, but Harbut's certification was not revoked. In October 2023, plaintiffs received an e-mail from NICET stating that Harbut was accused of providing false, incomplete, or misleading information in connection with a NICET certification.

¶ 6    In late 2022, American Backflow and three of the certified employees filed a lawsuit (separate from this lawsuit) against ASSE, seeking to enjoin the possible revocation of the certificates. (Lake County case No. 22-CH-239) (ASSE Lawsuit). In October 2023, during discovery in the ASSE Lawsuit, American Backflow learned that Hincks submitted a formal complaint to ASSE on behalf of Local 281 and included letters from himself, MacDonald, and Leker. Hincks's letter accused Harbut of fraudulently obtaining the ASSE 15010 certification and lacking the necessary field experience pertaining to fire sprinkler systems. It also stated that American Backflow "has a history of deceitful behavior in regard to obtaining industry certifications." MacDonald's letter stated that she was an American Backflow employee from June 2011 until May 2021 and that Harbut was "very rarely in the field" and "had no actual field experience for any fire systems." Leker's letter stated that Harbut "not only falsified his own work verification for NICET but also the work verification of others in my opinion." Walczak also sent an e-mail to ASSE accusing plaintiffs of fraudulently representing their credentials and stating that American Backflow "has in the past, fraudulently documented work experience thru [*sic*] the NICET organization, who is now scrutinizing their employees [*sic*] application requirements." Hincks also sent similar letters to NICET and the Fire Marshal. Plaintiffs allege that these statements are all false and that defendants were working together to damage plaintiffs' reputations.

¶ 7    In December 2023, plaintiffs learned through discovery in the ASSE lawsuit that Robert Wetzel, a Fire Marshal employee, contacted ASSE in March 2023 and threatened to remove the

ASSE 15010 certification from the approved certification list in Illinois if the American Backflow employees' certifications were not revoked. Plaintiffs alleged that Wetzel did this at the command of Hincks.

¶ 8   Callinan, acting as an attorney on behalf of Local 281, contacted ASSE seeking information regarding the formal complaint Local 281 filed against plaintiffs. In an e-mail to ASSE's general counsel, Callinan asked, "Has the investigation been completed, and if so has any action been taken against American Backflow and Fire Prevention? Specifically what actions have been taken against the owner, Dan Harbut, who seems to have been involved in many of the misrepresentations made to ASSE?" Plaintiffs alleged that this was to pressure ASSE into revoking plaintiffs' certifications.

¶ 9   Plaintiffs also alleged that, in March 2024, one of American Backflow's long-term customers, Profasts, Inc. (Profasts), stopped paying its bill and ceased communication with American Backflow. Plaintiffs alleged, on information and belief, that Local 281 convinced Profasts to stop doing business with American Backflow. Plaintiffs claimed that Profasts owed them $10,573.06.

¶ 10   Based on these allegations, plaintiffs brought claims for (1) tortious interference with economic advantage against Hincks and Local 281 for the complaints to ASSE and NICET; (2) tortious interference with business contracts against Hincks and Local 281 for interfering with the alleged contracts between American Backflow employees and ASSE and NICET because of their complaints; trade libel and commercial disparagement against Hincks, Walczak, and Local 281; (3) business defamation against Hincks, Walczak, and Local 281; (4) defamation *per se* of Harbut against Hincks, Leker, MacDonald, and Local 281; (5) violations of the Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.* (West 2022)) against Hincks, Walczak, and Local 281 for

their allegedly disparaging statements to ASSE and NICET; and (6) civil conspiracy against all defendants. Plaintiffs alleged they suffered compensatory damages of at least $933,967.06.

¶ 11    MacDonald moved to dismiss plaintiffs' complaint under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2022)). The remaining defendants moved to dismiss the complaint under section 2-619.1 of the Code (*id.* § 2-619.1). Defendants argued, *inter alia*, that plaintiffs' claims were entirely barred by the absolute litigation privilege. In support, defendants attached an affidavit from Hincks. In the affidavit, Hincks "absolutely denied" that he stated that he wished to put American Backflow out of business. He explained that it would be contrary to the mission of Local 281, which sought to unionize nonunion contractors, not put them out of business. Hincks stated that his attempts to organize American Backflow began in early 2021. He first tried to reach out to management but began talking directly to employees after his attempts to reach management failed. By April 2021, Local 281 sought a formal demand for recognition from American Backflow and filed a representation petition with the National Labor Relations Board (NLRB). An election was held by the NLRB in June 2021, resulting in a vote of nine to five in favor of unionizing. The NLRB subsequently certified Local 281 as the bargaining representative for a class of American Backflow employees.

¶ 12    Hincks said that, starting in April 2021, American Backflow—through Harbut, operations manager David Loes, and office manager Stephanie Hefner—spent weeks trying to undermine the NLRB's certification. This included hiring a "union buster" named Jonathan Sutton, who threatened the employees who favored unionization. Hincks claimed that American Backflow began firing union employees, including MacDonald and Leker. American Backflow also began transferring work to management-level staff that were not part of the Local 281 bargaining group. By July 2021, 10 union member employees went on strike until mid-August 2021. During that

time, American Backflow also allegedly began hiring nonunion replacement employees. As a result, Local 281 began filing unfair labor practice actions before the NLRB. Hincks said that, as of September 12, 2024, Local 281 had successfully prosecuted 17 unfair labor practice actions against American Backflow, resulting in 3 settlements approved by the NLRB. Hincks said proceedings before the NLRB were ongoing, as American Backflow allegedly continued to violate the settlement agreements.

¶ 13 Hincks claimed that the certification controversy that underlies this lawsuit stems from American Backflow's anti-union activities. Because American Backflow fired and replaced so many union employees, Hincks claims that it did not have enough employees with the requisite certifications and licensing to complete its work. Thus, Hincks posited that American Backflow sought to get certifications for Loes, Lindsay Bouffard, and Harbut's teenage son, who each did not have the necessary qualifications for certification, according to Hincks.

¶ 14 Hincks stated that Local 281 operated a local testing center for the ASSE 15010 certificate. He learned that the American Backflow employees went to a testing center in Pennsylvania instead of Local 281's testing center, which was the closest available. Hincks said that he had personal knowledge that Loes had little to no field experience, that Bouffard's personnel file obtained in NLRB proceedings showed that she did not have the five years' experience required by ASSE, and that Harbut's teenage son was 18 years old and therefore could not have the requisite five-years' experience. He claimed that nothing in his communications to ASSE or NICET was false and that the complaints were made in accordance with the procedures outlined in the code of conduct of each organization. Hincks said that ASSE and NICET mostly agreed with his statements, as ASSE revoked all but Harbut's license and NICET reduced Harbut's son's license from Level I to Level II.

¶ 15　Hincks said the complaints were made with possible legal action in mind. He said that Local 281 intended to persuade the Fire Marshal to seek injunctive relief under the Fire Sprinkler Contractor Licensing Act (Act) (225 ILCS 317/12 (West 2022)) or seek such injunctive relief itself. Ultimately, legal action became unnecessary because of ASSE and NICET's actions.

¶ 16　Also attached to defendants' motions was information regarding NICET and ASSE's licensing and complaint procedures. Under those procedures, NICET accepted four types of complaints, including complaints "pertaining to an applicant's or certificant's qualifications for a particular certification." NICET then reviews the complaint to see if it meets acceptance criteria, which consists of:

"a.　Complainant must have personal knowledge of the alleged violation or misbehavior or must be in a position to supply relevant and reliable documentation.

b.　Complainant must demonstrate by documentation and factual evidence that the complaint involves an issue or issues directly related to the criteria set forth in the preceding section entitled 'Complaints Accepted and Possible Actions.' Matters of a personal nature or matters not related to the criteria set forth will not be considered.

c.　The complaint will not be processed if the NICET records show the named person is no longer in the NICET Registry or is not a NICET applicant, unless the complaint is related to such person representing themselves as having a valid NICET certification."

If a complaint is accepted, NICET staff then attempts to resolve the complaint informally. If informal resolution is unsuccessful, then a hearing panel is established. The hearing panel reviews the complainant's statements and, if necessary, formally solicits the certificant for answers to specific questions. The certificant then may appeal the hearing panel's decision and request a formal hearing. At the formal hearing, the certificant will be provided with a "written description

of the scope of the hearing including a clear statement of the allegations to be heard" and have the right to legal counsel and to call witnesses. The decision after the formal hearing may then be appealed to the NICET board of governors. The decision of the board of governors is final and non-appealable.

¶ 17    Similarly, ASSE will "revoke the certification of any person who, after a hearing before the Board of Directors, is found to have obtained a certificate by fraud or deceit ***." According to the complaint in the ASSE Lawsuit, ASSE forms a complaint committee comprised of members of the board of directors. The committee conducts an investigation and makes a recommendation to the full board of directors. The full board of directors makes the final decision regarding certification.

¶ 18    After hearing oral arguments, the trial court dismissed plaintiffs' complaint under section 2-619(a)(9) of the Code. It reasoned that ASSE and NICET were quasi-judicial bodies and, therefore, defendants were entitled to the absolute litigation privilege for the statements made before ASSE and NICET. The trial court alternatively found that the statements were made in anticipation of legal proceedings, either directly by Local 281 or through the Fire Marshal. The trial court further pointed out that plaintiffs did not submit an affidavit or evidence to rebut Hincks's affidavit or seek to take his deposition under Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013). The trial court, though, allowed plaintiffs leave to amend their complaint to bring a claim related to Profast's failure to pay its bill. Plaintiffs decided not to bring such a claim, and the trial court entered final judgment on December 19, 2024. Plaintiffs timely appealed.

¶ 19                                   II. ANALYSIS

¶ 20    Section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2022)) allows a party to file a combined section 2-615 (*id.* § 2-615) and section 2-619 (*id.* § 2-619) motion to dismiss. *Henderson*

*Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 32. "A motion to dismiss under section 2-615 challenges the legal sufficiency of the plaintiff's claim, while a motion to dismiss under section 2-619 admits the legal sufficiency of the claim but asserts defenses or defects outside the pleading to defeat the claim." *Cahokia Unit School District No. 187 v. Pritzker*, 2021 IL 126212, ¶ 23. Section 2-619 permits the dismissal of an action where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2022). The absolute litigation privilege is an affirmative defense that may be raised in a motion to dismiss under section 2-619(a)(9). *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶¶ 14-15.

¶ 21     "Where a defendant presents affidavits or other evidentiary matter supporting the asserted defense, the burden shifts to the plaintiff to establish that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16. "In reviewing a dismissal under section 2-619(a)(9), this court determines whether there exists a genuine issue of material fact that should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Id.* ¶ 17. We review *de novo* the propriety of the trial court's dismissal under section 2-619(a)(9). *Id.*

¶ 22     Plaintiffs argue on appeal that the trial court erred in finding defendants' statements to be privileged because the statements were not made during litigation proceedings before quasi-judicial bodies. Plaintiffs also contend that defendants were not parties to any of the proceedings, so the privilege is inapplicable to them. We disagree with plaintiffs' arguments and hold that the trial court correctly found the statements privileged.

¶ 23    The absolute litigation privilege, also called the attorney litigation privilege, is generally based on section 586 of the Restatement (Second) of Torts, which states that an attorney is "absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts § 586 (1977). The privilege also extends to private parties. *Id.* § 587; *Johnson*, 2014 IL App (1st) 122677, ¶ 15. The privilege gives attorneys "the utmost freedom in their efforts to secure justice for their clients." (Internal quotation marks omitted.) *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 701-02 (2000). The privilege also allows attorneys to fully and fearlessly communicate with their client and facilitate the free flow of truthful information to the courts. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 24. "The privilege is predicated on the tenet that although defendant's conduct is otherwise actionable, because he is acting in furtherance of some interest of social importance, the communication is protected." *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 833 (2006). In light of these policies, a defendant's motives are irrelevant. *Popp v. O'Neil*, 313 Ill. App. 3d 638, 642 (2000).

¶ 24    Illinois's litigation privilege is more expansive than the Restatement's. In Illinois, the privilege applies to communications made before, during, and after legal proceedings. *Bedin v. Northwestern Memorial Hospital*, 2021 IL App (1st) 190723, ¶ 40. It also extends beyond solely statements made by attorneys and defamation claims. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 27; see *Toyo Tire Corp. v. Atturo Tire Corp.*, No. 2022-1817, 2024 WL 4404358 (Fed. Cir. Oct. 4, 2024) ("Over the last decade, Illinois courts have readily and consistently extended the privilege beyond the Restatement (Second) to cover numerous other causes of action, in furtherance of Illinois policy and the purposes of the privilege."). The only requirement for the application of the

privilege is that the communication must pertain to proposed or pending legal proceedings. *Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶ 19. This requirement, however, is not strictly construed; any doubts related to pertinency must be resolved " 'in favor of finding the communication pertinent to the litigation.' " *Goodman v. Goodman*, 2023 IL App (2d) 220086, ¶ 26 (quoting *Doe v. Williams McCarthy, LLP*, 2017 IL App (2d) 160860, ¶ 19). "[T]he privilege can be applied to statements or actions related to the subject controversy *and* those not confined to specific issues related to the litigation." (Emphasis in original.) *Id.* When the privilege applies, "no liability will attach even at the expense of uncompensated harm to the plaintiff." *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 25.

¶ 25    The privilege applies to statements made in legislative, judicial, and quasi-judicial proceedings. *Zych v. Tucker*, 363 Ill. App. 3d 831, 834 (2006). Courts evaluate whether a body is quasi-judicial based on the presence of six powers:

> "(1) the power to exercise judgment and discretion; (2) the power to hear and determine or to ascertain facts and decide; (3) the power to make binding orders and judgments; (4) the power to affect the personal or property rights of private persons; (5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and (6) the power to enforce decisions or impose penalties." *Kalish v. Illinois Education Ass'n*, 157 Ill. App. 3d 969, 971-72 (1987).

"A quasi-judicial body need not possess all six powers; however, the more powers it possesses, the more likely the body is acting in a quasi-judicial manner." *Id.* at 972.

¶ 26    Applying this legal framework, we first consider whether the ASSE and NICET proceedings were quasi-judicial proceedings. The Act requires fire sprinkler inspectors seeking licensure to possess a certification from a nationally recognized certification organization, such as

NICET; possess an ASSE 15010 certification; or complete an apprentice program approved by the United States Department of Labor. 225 ILCS 317/17(b) (West 2022). As part of their certification and revocation procedures, ASSE and NICET have at least five of the six quasi-judicial powers. As detailed above, after receiving a complaint regarding a certificant, they have the power to determine or ascertain facts and decide through their investigation and hearing processes; they have the power to exercise judgment and discretion to revoke (or not) the certification of an individual following the investigation and hearing; they have the power to make binding orders and judgments at the end of the investigation and hearing process through their decision regarding revocation of certification; they have the power to affect the rights of private persons through their decision regarding the certification of an individual following the investigation and hearing process; and they have the power to impose penalties by revoking the certification of an individual found to have violated certification rules following the investigation and hearing. Thus, we conclude that the ASSE and NICET proceedings were quasi-judicial proceedings.

¶ 27    Plaintiffs' argument that ASSE and NICET are not quasi-judicial bodies because they are not the only certification bodies specified under the Act is unpersuasive. There is no requirement that a quasi-judicial body be the only quasi-judicial body delegated by the legislature.

¶ 28    Plaintiffs' argument that ASSE and NICET are not quasi-judicial because they are private entities is also unavailing. Courts have found private entities to be quasi-judicial. For example, in *Bushell v. Caterpillar, Inc.*, 291 Ill. App. 3d 559, 563 (1997), the appellate court determined that private arbitration proceedings were quasi-judicial because they possessed several of the quasi-judicial powers and were therefore protected by the absolute litigation privilege. In doing so, the court distinguished Illinois law from the laws of other states, such as California, that apply the privilege only to "official" proceedings—*i.e.* court proceedings. *Id.*

¶ 29    We also find *Illinois College of Optometry v. Labombarda*, 910 F. Supp. 431 (N.D. Ill. 1996), instructive. In that case, the plaintiffs sued for defamation based on a letter complaint sent to the Council on Optometric Education. *Id.* at 432. The federal court determined that the Council on Optometric Education had four of the six powers of quasi-judicial bodies under Illinois law: it had the power to exercise judgment and discretion as an accrediting agency for optometric education recognized by the United States Department of Education; the power to hear and ascertain facts and decide; the power to hold hearings when appropriate; and the power to make decisions about the institutions it accredits. *Id.* at 433. Because the complaint was a preliminary step to starting the quasi-judicial proceedings, the court found that the statements were absolutely privileged. *Id.* at 433-34.

¶ 30    Here, though there are notable differences from traditional arbitration proceedings, the ASSE and NICET proceedings are in essence limited-form arbitration proceedings focused on whether the individuals those companies certify misrepresented their qualifications for certification. Like the Council on Optometric Education, ASSE and NICET have the majority of quasi-judicial powers that they may exercise over the entities they certify. Both the legislature and Fire Marshal have recognized ASSE and NICET's certification authority (see 225 ILCS 317/17(b) (West 2022); 41 Ill. Adm. Code 109.45(e)(2)(D) (2023)), just as the U.S. Department of Education recognized the certification authority of the Council on Optometric Education. Because ASSE and NICET have these powers, their private nature is not a bar to being a quasi-judicial body. We therefore conclude that the ASSE and NICET proceedings were quasi-judicial proceedings.

¶ 31    Next, we must determine whether defendants' statements were related to the quasi-judicial proceedings. Defendants' statements questioned plaintiffs' qualifications for the ASSE and NICET certifications. Defendants submitted the complaints through the entities' formal complaint

process. Because defendants' statements concerned the same subject matter and were necessary to initiate the quasi-judicial proceedings, we conclude that the statements were sufficiently related to the ASSE and NICET proceedings. Though defendants were not parties to the proceedings, they nevertheless are protected by the privilege because the pertinency requirement is met. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 29; see *Qualizza v. Freeman*, 2024 IL App (1st) 231534-U, ¶ 38 ("the communication can also be made to third parties beyond attorneys or the litigants so long as the pertinency requirement is met").

¶ 32    Defendants' actions also served to further the State's public policy. See *Atkinson*, 369 Ill. App. 3d at 833 (the purpose of the privilege is to protect those acting in furtherance of public policy); see also *Jordan v. Knafel*, 355 Ill. App. 3d 534, 539 (2005) (noting that "[p]ublic policy is the legal principle that no one may lawfully do that which has the tendency to injure the welfare of the public"). As the General Assembly expressly recognized in enacting the Act, "the improper service of fire sprinkler systems and associated components creates conditions that may adversely affect the public health and general welfare." 225 ILCS 317/5 (West 2022). Thus, the purpose of the Act is to regulate the fire sprinkler service industry to "ensur[e] that those who hold themselves out as possessing professional qualifications to engage in service of fire sprinkler systems are qualified to render service, and provid[e] for the high standards of professional conduct by those licensed to service fire sprinkler systems." *Id.* Consistent with this public policy, defendants reported to ASSE and NICET that plaintiffs may not have the qualifications required for certification. Though defendants may have also had ulterior motives for doing so, their motives are irrelevant for purposes of the privilege. *Popp*, 313 Ill. App. 3d at 642.

¶ 33    The circumstances underlying this case are similar to complaints made to other regulatory and licensing bodies, such as the Attorney Registration and Disciplinary Commission (ADRC). In

*Kykowski v. Bergman*, the appellate court determined that "any statements made during any step preliminary and necessary to a judicial or quasi-judicial proceeding" are absolutely privileged. 299 Ill. App. 3d 157, 165 (1998). Thus, the court concluded that complaints made to the ARDC are absolutely privileged, even if defamatory. *Id.* "This assures that individuals are in no way discouraged from lodging complaints with the appropriate disciplinary authorities." *Id.*

¶ 34 Here, Hincks submitted his complaints to ASSE and NICET through their official complaint methods. ASSE and NICET investigated those complaints and determined that they were justified for some of the American Backflow employees. The statements were made to initiate quasi-judicial proceedings and served to advance a public policy specifically enunciated by the General Assembly. To hold otherwise would discourage concerned individuals from lodging complaints with the appropriate entities to protect this public interest. Accordingly, we conclude that defendants' statements are protected by the absolute litigation privilege.

¶ 35 We also agree with the trial court that defendants' statements are protected by the privilege for a second reason. The statements and actions also occurred in anticipation of proposed litigation. The statements were not only sent to ASSE and NICET, but to the Fire Marshal. The Fire Marshal is tasked with overseeing the licensing of fire sprinkler contractors and enforcing the terms of the Act. 225 ILCS 317/12 (West 2022). As such, the Fire Marshal may initiate proceedings to enjoin entities from improperly holding themselves as licensed under the Act. *Id.* Had ASSE and NICET not investigated defendants' claims, defendants planned to ask the Fire Marshal to use its authority to enjoin plaintiffs from their work regulated by the Act. Defendants also planned to bring their own proceedings under the Act. Thus, as defendants' statements were made in connection with this proposed litigation, they are also protected by the privilege for this reason. See *Scarpelli*, 2018

IL App (1st) 170874, ¶ 19 (noting that the privilege protects statements related to proposed proceedings).

¶ 36   Finally, defendants' statements are protected by the privileges for a third reason not relied upon by the trial court. See *People v. Johnson*, 208 Ill. 2d 118, 129 (2003) (holding that the appellate court may affirm the judgment on any basis of record). When defendants made the statements to ASSE, NICET, and the Fire Marshal, Local 281 and American Backflow were enmeshed in proceedings before the NLRB. The NLRB is unquestionably a quasi-judicial body. The National Labor Relations Act vested the NLRB with the power to prevent unfair labor practices, established a complaint and hearing procedure before the NLRB, provided subpoena power, and established enforcement of NLRB orders. 29 U.S.C. §§ 160, 161 (2018). Federal courts and courts in other states have long held that the NLRB is a quasi-judicial body. See, *e.g.*, *Weitzner v. U.S. Precast Corp.*, 645 So. 2d 180, 181 (Fla. Dist. Ct. App. 1996); *Haleston Drug Stores v. National Labor Relations Board*, 187 F.2d 418, 421 (9th Cir. 1951) (the NLRB is "an administrative body exercising quasi-judicial powers"). Both the NLRB proceedings and the allegedly defamatory statements were part of the ongoing union organizing dispute between the parties and concerned American Backflow's business practices. Given the broad application of the pertinency requirement (*Goodman*, 2023 IL App (2d) 220086, ¶ 26), we therefore conclude that defendants' statements were related to the NLRB proceedings.

¶ 37   The absolute litigation privilege bars each of plaintiffs' claims. Though plaintiffs brought claims other than defamation, the privilege has also been extended to claims that are based on allegedly defamatory statements. See *Johnson*, 2014 IL App (1st) 122677, ¶ 17. This is because to apply the privilege only to defamation claims would allow a plaintiff to recast the defamation claim to avoid the privilege. *Id.* ¶ 18. Here, as plaintiffs' claims are all based on the same conduct of

allegedly false and defamatory statements, they are all recasts of the defamation claim. Thus, all of plaintiffs' claims are barred by the absolute litigation privilege.

¶ 38    In their reply brief and at oral argument, plaintiffs argued that a qualified privilege analysis is more appropriate for the complaints submitted to ASSE, NICET, and the Fire Marshal. Because we conclude that the complaints were necessary to begin the quasi-judicial proceedings and protected by the absolute litigation privilege, we do not address this argument.

¶ 39                                III. CONCLUSION

¶ 40    For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

¶ 41    Affirmed.

*American Backflow & Fire Prevention, Inc. v. Hincks*, **2025 IL App (2d) 250023**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 24-CH-14; the Hon. Janelle K. Christensen, Judge, presiding. |
| **Attorneys for Appellant:** | George W. Svoboda, of McHenry, for appellants. |
| **Attorneys for Appellee:** | Gregory W. Hose, Andrew S. Pigott, and Jonathan J. Tew, of Gregorio, Stec, Klein & Hose, of Chicago, for appellee Jennifer MacDonald.<br><br>Marcos Reilly, Tom H. Luetkemeyer, and Katherine G. Schnake, of Hinshaw & Culbertson, LLP, of Chicago, for other appellees. |