Charlotte LEAVITT, Plaintiff,

v.

James J. BICKERTON and Brian H. Corliss, d/b/a Brian H. Corliss Associates, Defendants.

Civ. A. No. 92–12311–RDL.[1]

United States District Court, D. Massachusetts.

May 19, 1994.

Norman J. Kaplan, Mills, Orkin, and Kaplan, Boston, MA, for Charlotte Leavitt.

Neal H. Sahagian, O'Neil, DiCicco, Sahagian & Powers, Boston, MA, for James J. Bickerton.

<hr />

1. This case has been transferred to the Honorable Reginald D. Lindsay. Since the Court took this motion under advisement prior to the transfer, the Court resolves the matter before it in this decision.

Vincent F. O'Rourke, Jr., Robert V. Mulkern, William F. Ryan, Bowditch & Dewey, Worcester, MA, for Brian H. Corliss.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This matter comes before the Court upon the motion of the defendant, Brian H. Corliss ("Mr. Corliss"), to dismiss Count V (defamation) and Count VI (intentional infliction of emotional distress)·of the pending action. In resolving this motion to dismiss, the Court necessarily accepts as true all the following averments of the plaintiff, Charlotte Leavitt ("Mrs. Leavitt"):

Mrs. Leavitt originally brought a malpractice action in Massachusetts against Dr. Ilona Laszlo–Higgins, an obstetrician currently residing in Hawaii, alleging that Dr. Higgins' negligent failure to recognize fetal hypoxia was the cause of brain damage to Mrs. Leavitt's son, Darryl. *See Leavitt v. Higgins,* No. 84–1035 (Norfolk Super.Ct.). At trial in 1988 the jury found that Dr. Higgins had breached her duty of care during the delivery, but could not come to a verdict on the issue of causation. A mistrial followed. That case has not yet been retried.

During the malpractice suit, Leavitt's attorney, Andrew Meyer of Boston, sent a letter about the suit, and about the birth of another child with brain damage, to the school of medicine where Dr. Higgins was an assistant clinical professor. Dr. Higgins in turn sued Mrs. Leavitt, Mr. Meyer, and his firm for libel. *See Higgins v. Meyer,* No. 90–00679–DAE (D.Haw.).

Dr. Higgins' lawyer in Hawaii, a Mr. Bickerton, hired a New Hampshire private investigator, Mr. Corliss, to investigate matters involving the libel case. In the course of Mr. Corliss' investigation, he interviewed two of Mrs. Leavitt's former employers, Mrs. Tetanski and Mr. Pizzi. In each of the interviews, Mr. Corliss identified himself and his employer. Mr. Corliss then made statements which implied that Darryl's brain damage was caused by Fetal Alcohol Syndrome and inquired about Mrs. Leavitt's alcohol use during her pregnancy with Darryl.

In response to Mr. Corliss' questions, Mrs. Tetanski replied that she did not know Mrs. Leavitt during the pregnancy and that she had no knowledge of her drinking since making her acquaintance. Mr. Corliss then terminated the interview. Mr. Pizzi, who did know Mrs. Leavitt while she was pregnant with Darryl, provided no information about her drinking and said that she was a neat, professional, and personable employee. Both Mrs. Tetanski and Mr. Pizzi were left with the impression that independent medical evidence indicates that Darryl's brain damage had been caused by his mother's alcohol consumption.

Based on these interviews, Mrs. Leavitt brings this action against Mr. Bickerton, his firm, and Mr. Corliss alleging, inter alia, defamation and intentional infliction of emotional distress. Mr. Corliss now moves for partial dismissal contending that, as it is alleged that the defamatory statements were made in the course of litigation, they are, therefore, absolutely privileged.

■ In Massachusetts an attorney's privilege to publish potentially defamatory matter is guided by the Restatement (Second) of Torts. *Sriberg v. Raymond,* 370 Mass. 105, 108, 345 N.E.2d 882 (1976). Section 586 of the Restatement (1989) provides:

An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

The privilege thus attaches to potentially defamatory statements when the statements (1) are made preliminary to or during a judicial proceeding, and (2) are related to the judicial proceeding.

From Mrs. Leavitt's own allegations, it is clear that the parties were and are engaged in far-flung, virtually global ongoing litigation. The first factor is thus satisfied.

The "relatedness" factor is discussed in Comment c to section 586: "The defamatory matter [must have] some reference to the subject matter of the proposed or pending

litigation, although it need not be strictly relevant to any issue involved in it." This broad standard is underscored in *Sullivan v. Birmingham*, 11 Mass.App.Ct. 359, 362, 416 N.E.2d 528 (1981) where the court said that "the words 'pertinent to the proceedings' are not to be construed narrowly, nor according to evidentiary rules as to admissibility." (citation omitted). *See also Bleecker v. Drury*, 149 F.2d 770, 772 (2nd Cir.1945); *Brown v. Shimabukuro*, 118 F.2d 17, 18 (D.C.Cir.1941). Such a broad standard of relevancy protects the integrity of the adversarial system, while still providing some limitation on malicious conduct. *Thornton v. Rhoden*, 245 Cal. App.2d 80, 89–90, 53 Cal.Rptr. 706 (1966).

■ The malpractice case and the derivative Hawaii libel case are based on the brain damage that Mrs. Leavitt alleges occurred during her son's delivery. Fetal hypoxia, however, is not the only cause of brain damage to newborns. Indeed, there are numerous causes of such an affliction, one of which is Fetal Alcohol Syndrome. Thus, an investigation into a potential cause of Darryl's brain damage falls within the ambit of being "related to" the ongoing litigation and the second factor would likewise appear to be satisfied. *See Financial Corp. of America v. Wilburn*, 189 Cal.App.3d 764, 234 Cal.Rptr. 653, 660–61 (1987) (absolute privilege extends to preliminary conversations and interviews with prospective witnesses if they are some way related to or connected with a pending or contemplated action); *Russell v. Clark*, 620 S.W.2d 865, 868 (Tex.Civ.App.1981) (absolute privilege extended to out-of-court communications to allow attorneys the utmost freedom in gathering evidence).

Mrs. Leavitt, however, contends that any privilege surrounding the encounter between Mr. Corliss and Ms. Leavitt's former employers should be narrowly drawn because the parties contacted were only "potential witnesses," not parties involved in the suit. Indeed, it has been said that "a broadly drawn rule immunizing defamatory statements made to any individual deemed a 'potential witness' could be considerably exploited and lead to substantial hardship not justified by the purposes underlying the privilege." *Hoover v. Van Stone*, 540 F.Supp. 1118, 1123 (D.Del.1982).[2] Evidencing similar concerns, the Eighth Circuit has held that the attorney privilege is to be narrowly drawn when the allegedly defamatory communication involves "witness interrogatories" sent to potential class action members, reasoning that, "[n]o public purpose is served by allowing a person to unqualifiedly make libelous or defamatory statements about another, but rather such a person should be called upon to prove the correctness of his allegations or respond in damages." *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698 (8th Cir.1979). This decision, based on Iowa state law, does not jibe with Massachusetts' broader interpretation, however, and this Court declines to delineate a limited province for the privilege as matter of the common law of Massachusetts. As Chief Justice Shaw stated a century and a half ago:

> It is, on the whole, for the public interest, and best calculated to subserve the purposes of justice, to allow counsel full freedom of speech, in conducting the causes, and advocating and sustaining the rights, of their constituents; and this freedom of discussion ought not to be impaired by numerous and refined distinctions.

*Hoar v. Wood*, 44 Mass. (3 Met.) 193, 197–78 (1841); *see also Hoover v. Van Stone*, 540 F.Supp. 1118 (communications to potential witnesses covered by absolute privilege under Delaware law).

■ Moreover, in Massachusetts the privilege attaches regardless of the underlying intent behind Mr. Corliss' interviews. The Restatement (Second) Torts § 586, comment a, states: "[The privilege] protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity." Indeed, Massachusetts has long recognized the attor-

---

2. In *Hoover*, the plaintiff sent interrogatories to 220 of the defendant's customers to determine which of them had purchased shares in three failing corporations which were the subject of the underlying suit. The court held the communications privileged because they "were made to a limited and discrete group of the Van Stone's customers for the purpose of obtaining evidence for trial." *Id.* at 1123.

ney as a zealous advocate for the client without fear that such actions will give rise to liability. *See Sriberg v. Raymond,* 370 Mass. at 108, 345 N.E.2d 882; *Dolan v. Von Zweck,* 19 Mass.App.Ct. 1032, 1033, 477 N.E.2d 200 (1985); *Sullivan v. Birmingham,* 11 Mass. App.Ct. at 361, 416 N.E.2d 528.

It is also clear that the privilege applies to statements made outside the courtroom. *See, e.g., Dolan v. Von Zweck,* 19 Mass.App. Ct. at 1033, 477 N.E.2d 200 (potentially defamatory letter from psychiatrist concerning father's parental capability was protected); *Hoover v. Van Stone,* 540 F.Supp. at 1121 (communications seeking evidence from a broker's other clients were privileged in fraud action against broker); *Pacific Furniture Mfg. v. Preview Furniture Corp.,* 626 F.Supp. 667, 679 (M.D.N.C.1985), *aff'd,* 800 F.2d 1111 (Fed.Cir.1986) (correspondence made in good faith for the purpose of obtaining supporting evidence for proposed litigation is privileged); Restatement (Second) Torts § 586, comment a (protection extends to conferences and other communications preliminary to judicial proceedings).

In the instant case, Mr. Corliss' out-of-court statements were designed to elicit evidence of alcohol use by Mrs. Leavitt during her pregnancy. That he could have used a more tactful method of inquiry or otherwise saved Mrs. Leavitt humiliation and grief is outside the scope of the requisite analysis. To be privileged, a statement need only be made in the course of judicial proceedings and be, in some way, related to those proceedings. Mr. Corliss' inquiries meet these requirements and are therefore privileged.

Ms. Leavitt contends, in the alternative, that even if the statements were privileged, the privilege was defeated by the manner in which the defendants published the statements. While it is true that unnecessary or unreasonable publication of statements can defeat the privilege, *Sullivan v. Birmingham,* 11 Mass.App.Ct. at 362, 416 N.E.2d 528, the plaintiff has not alleged any facts here which would lead to such a conclusion. Mr. Corliss questioned Mrs. Leavitt's former employers, a limited and discrete group of people for the legitimate purpose of establishing an affirmative defense in ongoing liti-

gation. *See Hoover v. Van Stone,* 540 F.Supp. at 1123. As matter of law such action is reasonable publication protected by the attorney privilege.

Finally, it is of little significance that the statements made to Mrs. Leavitt's former employers were made by a private investigator and not by an attorney. The privilege conferred upon attorneys relates to their function as an advocate on behalf of their client, as is evidenced by the requirement that statements be made in the context of pending or ongoing litigation. *See Sriberg v. Raymond,* 370 Mass. at 109, 345 N.E.2d 882 ("[I]t appears desirable to install the privilege where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation."). Thus, insofar as Mr. Corliss was engaged in a function which would be protected had it been undertaken by an attorney, he is entitled to absolute immunity while acting as an agent of an attorney.

Mrs. Leavitt's claim of intentional infliction of emotional distress founders on the same analysis. "A privilege which protected an individual from liability for defamation would be of little value if the individual were subject to liability under a different theory of tort." *Correllas v. Viveiros,* 410 Mass. 314, 324, 572 N.E.2d 7 (1991); *see also Frazier v. Bailey,* 957 F.2d 920, 932 (1st Cir.1992) (interpreting Massachusetts law); *Sullivan v. Birmingham,* 11 Mass.App.Ct. at 367–68, 416 N.E.2d 528.

In sum, Mr. Corliss conducted pretrial interviews for the purpose of gathering facts to establish an affirmative defense in an ongoing medical malpractice case. Mrs. Leavitt has not alleged any facts which could lead a reasonable jury to conclude that the attorney privilege had been defeated by unreasonable or unnecessary publication. The defamation and intentional infliction of emotional distress claims against Mr. Corliss arising out of this incident are therefore DISMISSED.