2025 IL App (1st) 242110
Opinion filed December 10, 2025

FIRST DISTRICT
THIRD DIVISION

No. 1-24-2110

| | | |
|---|---|---|
| AMY M. LEWIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 21 L 9530 |
| | ) | |
| JANET KALBHEN, an Individual, and | ) | |
| VANTIUS, INC., an Illinois Domestic | ) | |
| Business Corporation, | ) | Honorable |
| | ) | Eileen M. O'Connor, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    On January 21, 2020, Janet Kalbhen (Kalbhen) filed a petition for dissolution of marriage against her husband, Carl. Kalbhen was represented by the law firm Beermann LLP (Beermann). During the course of the divorce proceedings, Beermann retained a private detective agency, Vantius, Inc. (Vantius), to conduct a check on the license plate of a vehicle suspected of belonging to Carl's girlfriend. The license plate check showed that the vehicle belonged to plaintiff. Beermann then directed Vantius to perform a background investigation of her. Vantius conducted the investigation and disclosed its findings in a written report to Beermann on October 20, 2020, revealing plaintiff's social security number and information about her residential addresses, phone numbers, business ownerships, traffic violations, liens, and vehicle and voter registrations. The divorce case settled on the eve of trial, and plaintiff filed a second amended complaint against defendants Kalbhen and Vantius, alleging that they had committed multiple privacy torts against her in the course of conducting the background investigation and preparing and issuing the report detailing her private information. No claims were brought against Beermann.

No. 1-24-2110

¶ 2    Count I of plaintiff's second amended complaint for intrusion upon seclusion alleged that defendants committed an unauthorized intrusion into her private affairs when Kalbhen (through Beermann) hired Vantius to investigate her, after which Vantius issued the October 20 report detailing her personal and private information. Count II for public disclosure of private facts alleged that Kalbhen hired Vantius with the intention to cause her severe emotional distress, after which Vantius published the October 20 report which contained private information about her. Count III alleged that defendants violated the Driver's Privacy Protection Act of 1994 (DPPA) (18 U.S.C. § 2721 *et seq.* (2018)) when Kalbhen hired Vantius, who ran a check on plaintiff's license plate and then disclosed private information contained in her motor vehicle records. Count IV sought injunctive relief.

¶ 3    The circuit court entered summary judgment in favor of defendants on all four counts, finding that their complained-of conduct in photographing and checking the license plate, investigating plaintiff, and preparing the October 20 report in conjunction with the underlying divorce proceeding was fully protected by the absolute litigation privilege. The court additionally granted summary judgment for defendants on count III on the basis that there was no violation of the DPPA. Plaintiff now appeals the grant of summary judgment in favor of defendants. For the reasons that follow, we affirm.

¶ 4    During discovery, depositions were taken of the following witnesses: Kalbhen, Holly Jean Baer, Madison Boland, Candace Meyers, Sergio Serritella, Matteo Serritella, and plaintiff.

¶ 5    Kalbhen testified that she filed for divorce from her husband Carl in January 2020 and was represented by Beermann. In February 2020, Kalbhen's daughter told her that she had just visited with Carl and learned that he was dating a woman named Amy, who lived in Georgia. On September 12, 2020, Kalbhen's children were visiting their grandmother (Carl's mother) when

- 2 -

they saw a woman standing outside the house near an automobile with Georgia license plates. Suspecting that the woman was the person who Carl was dating, they phoned Kalbhen to let her know of the woman's presence outside the grandmother's home. Kalbhen then texted and spoke on the phone with her good friend, Holly Jean Baer, who lived near the grandmother's home, and asked her to take a photograph of the automobile's license plate. Using her cell phone, Baer took the photograph of the license plate and sent it to Kalbhen. Kalbhen forwarded the photograph to her divorce attorneys at Beermann, who retained a private detective agency, Vantius, to conduct a check of the license plate which revealed that plaintiff was the owner of the vehicle. Vantius subsequently prepared a background report on plaintiff which it e-mailed to Beermann in October 2020. The report detailed certain identifying information including her social security number. Beermann forwarded the report to Kalbhen in October 2021. Kalbhen never had any direct communication with Vantius, and she never disclosed plaintiff's social security number to anyone. Kalbhen deleted the background report from her computer at the end of 2022.

¶ 6 Candace Meyers, an attorney with Beermann and the lead counsel in Kalbhen's divorce case, testified that another attorney in the firm, Madison Boland, contacted Vantius to run a check on the license plate. Vantius routinely performs background checks and financial investigations for Beermann. The license plate check identified plaintiff as the owner of the vehicle.

¶ 7 Boland testified that after the license plate check, she called Vantius's president, Sergio Serritella, and asked him to perform a background investigation and report on plaintiff. When asked whether there was a written agreement between Beermann and Vantius with regard to the background report on plaintiff, Boland testified no. Boland explained that such an informal arrangement was not unusual because she had worked with Sergio for a long time, and that he

generally would just orally inform her of the cost of the investigation, and she would relay that information to the higher-ups in the firm.

¶ 8     Boland's purpose in requesting the background report was to uncover information as to whether Kalbhen's husband Carl was dissipating marital assets by spending them on plaintiff and also whether plaintiff was spending money on Carl to such a degree that she was effectively another source of income for him. Boland and Meyers explained that a spouse's sources of income are always relevant in divorce cases because they affect how the court will distribute the marital assets and whether and to what extent it will award maintenance. Sergio provided the requested background report on October 20, 2020, which included plaintiff's social security number as well as information regarding her traffic violations, business ownerships, residential addresses and phone numbers, property tax information, and vehicle and voter registrations.

¶ 9     Meyers explained that plaintiff's social security number was provided because it could be used to subpoena her bank records and obtain other financial information helpful for determining whether Carl was dissipating marital assets by spending them on her and also whether plaintiff was a source of income for Carl. Plaintiff subsequently provided financial records and gave a deposition that showed that she and Carl exchanged gifts and visited each other out-of-state and that she paid for the hotel room where they stayed in Florida in 2020 and also gave Carl $10,000 to help him pay his attorney fees in the underlying divorce litigation. Boland testified that plaintiff's deposition indicated that she was "financially entangled" with Carl.

¶ 10     Sergio testified consistently with Boland and Meyers that he "received a communication from Beermann Law" to run a license plate check on a vehicle and then prepare a background report on the owner of the vehicle. Sergio conducted the check on the license plate number that was provided to him, revealing that plaintiff was the owner. Sergio's brother, Matteo, another

employee of Vantius, then prepared the background report by using certain proprietary databases to generate information on plaintiff's corporate filings, business names, property tax assessments, residential and e-mail addresses and phone numbers, traffic violations, liens, and voter and vehicle registrations. The report also contained plaintiff's social security number. Sergio explained that the social security number was provided to facilitate Beermann's ability to issue subpoenas to banks and uncover financial information relevant to Kalbhen's dissipation claim against Carl.

¶ 11    Sergio stated that he did not bill Beermann for the license plate check and background investigation and report because they did not take much time to perform. Sergio explained that he had a long-standing relationship with Beermann which provided him and his company a lot of work. As a sort of thank-you for the long-standing business relationship, he decided not to charge Beermann for the relatively short amount of work entailed in investigating plaintiff.

¶ 12    Following the completion of discovery, the circuit court granted summary judgment for defendants on all counts. The court found that plaintiff's claims against Kalbhen were premised on her conduct in asking her friend to take a photograph of the vehicle parked in front of her mother-in-law's house and forwarding that photograph to her divorce attorneys at Beermann. Plaintiff's claims against Vantius were premised on its running of a license plate check on the vehicle and then investigating plaintiff and providing Beermann with the resultant background report identifying her personal information. The court found that all of defendants' complained-of actions and communications were protected under the absolute litigation privilege and therefore defendants were immune from liability. In addition to granting summary judgment for defendants on counts I through IV on the basis of the absolute litigation privilege, the court separately examined count III, which alleged a violation of the DPPA. The court found that defendants' disclosure of plaintiff's personal information was permissible under section 2721 of the DPPA (18

U.S.C. § 2721 (2018)) and therefore also granted their motion for summary judgment on count III on that basis. Plaintiff appeals.

¶ 13 Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Ledeaux v. Motorola Solutions, Inc.*, 2024 IL App (1st) 220886, ¶ 38. Review is *de novo*. *Id.*

¶ 14 Our analysis will consider the order granting summary judgment in parts. We will address the circuit court's order granting summary judgment for Kalbhen and then for Vantius on counts I and II (privacy torts) based on the absolute litigation privilege. Next, we will consider the circuit court's order for both defendants on count III (DPPA). Finally, we will address the circuit court's order granting summary judgment for both defendants on count IV (injunctive relief).

¶ 15 First, plaintiff contends that the circuit court erred in finding that the absolute litigation privilege protects Kalbhen from liability on counts I and II for intrusion upon seclusion and public disclosure of public facts.

¶ 16 The absolute litigation privilege immunizes statements by attorneys during the course of litigation. *Goodman v. Goodman*, 2023 IL App (2d) 220086, ¶ 25. The privilege is based on section 586 of the Restatement (Second) of Torts, which states that an attorney is "absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts § 586 (1977). The privilege is intended to secure attorneys "the utmost freedom in their efforts to secure justice for their clients." *Id.* § 586 cmt. a. It also furthers the attorney's ability to communicate fully and fearlessly with his client and to encourage the free

flow of truthful information to the courts. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 24. The privilege applies to communications before, during, or after litigation, regardless of defendant's motive in making that communication. *Bedin v. Northwestern Memorial Hospital*, 2021 IL App (1st) 190723, ¶ 40. The only requirement for the application of the privilege is that the communication must pertain to proposed or pending litigation (*Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶ 19), meaning that as long as the communication relates to the litigation and is in furtherance of representation, the privilege applies. *Id.* All doubts are resolved in favor of finding the communication pertinent to the litigation. *Id.*

¶ 17     Under section 587 of the Restatement (Second) of Torts, a private party to the litigation enjoys the same privilege. See *Bedin*, 2021 IL App (1st) 190723, ¶ 39 (citing Restatement (Second) of Torts § 587 (1977)). Comment a to section 587 explains that "[t]he privilege stated in this Section is based upon the public interest in according to all men the utmost freedom of access to the courts of justice for the settlement of their private disputes. Like the privilege of an attorney, it is absolute." Restatement (Second) of Torts § 587 cmt. a (1977).

¶ 18     The privilege originally began to protect attorneys and parties from defamation claims (*id.* §§ 586-587), but it has been extended to other causes of action. For example, in *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, we held that the privilege applied to protect a party and its attorneys from allegations of negligence, negligent infliction of emotional distress, breach of contract, and invasion of privacy. *Id.* ¶ 1, ¶¶ 16-17. We noted that the privilege would be meaningless if a simple recasting of the cause of action from defamation to a privacy tort or to another cause of action could void its effect. *Id.* ¶ 17; see *Bedin*, 2021 IL App (1st) 190723, ¶ 46 (holding that the absolute litigation privilege protected a party from an intentional infliction of

emotional distress claim that was premised on statements made in contemplation of, and that were pertinent to, a pending guardianship action).

¶ 19 The privilege also has been extended beyond communications to conduct performed in the litigation setting, when such conduct is pertinent to proposed or pending litigation. See *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 27; *Scarpelli*, 2018 IL App (1st) 170874, ¶ 25. We review *de novo* whether the privilege applies in a cause. *Scarpelli*, 2018 IL App (1st) 170874, ¶ 14.

¶ 20 None of the parties dispute that the absolute litigation privilege applies to protect a party's and an attorney's communications and conduct from the allegations of intrusion upon seclusion and public disclosure of public facts contained in counts I and II, as long as such communications and/or conduct pertain to the underlying divorce litigation. The issue with respect to Kalbhen is whether her conduct in this case, specifically, her request to Holly Jean Baer to take a photograph of the license plate of the vehicle parked in front of her mother-in-law's house and then forwarding that photograph to her attorneys at Beermann, was pertinent to the underlying divorce litigation.

¶ 21 Kalbhen testified she asked Baer to photograph the license plate and forwarded it to Beermann due to her suspicion that the vehicle belonged to the person dating her husband, Carl, and that she was curious about that person's identity. Kalbhen's divorce attorneys, Boland and Meyers, testified that after receiving the photograph, Boland directed Vantius to run a check of the license plate, revealing that plaintiff was the owner of the vehicle. Boland then directed Vantius to run a background investigation on plaintiff, which ultimately led to plaintiff being subpoenaed and testifying to her financial entanglement with Carl, including her paying $10,000 of his attorney fees in the divorce litigation.

¶ 22 Boland and Meyers testified that plaintiff's testimony regarding her financial entanglement with Carl was relevant to whether he was dissipating marital assets and whether she

was a source of income for him, all of which could be considered when the court distributed assets under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/503 (West 2020)). Clearly, Kalbhen's conduct that led to the identification and deposing of plaintiff was pertinent to the divorce litigation and, as such, was protected by the absolute litigation privilege.

¶ 23    Plaintiff counters, though, that the dissipation claim was not yet pending at the time Kalbhen procured the photograph of the license plate and forwarded it to Beermann and therefore the absolute litigation privilege did not then apply to protect her from liability for the alleged privacy torts in counts I and II. Plaintiff's argument is unavailing. At the time the photograph was taken, Kalbhen already had hired Beermann to represent her in the divorce proceedings, and Beermann was considering whether to bring a dissipation claim on Kalbhen's behalf; as discussed, the photograph led to Beermann discovering plaintiff's identity and to her subsequent deposition, all of which provided information regarding the potential dissipation claim as well as information about her financial entanglement with Carl. On these facts, Kalbhen's conduct in procuring the photograph and forwarding it to Beermann was pertinent to the divorce litigation and, as such, was privileged.

¶ 24    Plaintiff also argues that the absolute litigation privilege does not protect Kalbhen from liability for the privacy torts alleged in counts I and II because she admitted in her deposition in the divorce case that her impetus for initiating the investigation of plaintiff was merely to satisfy her own curiosity about the nature of plaintiff's relationship with Carl and she was unsure how such information would be of use to her attorneys at Beermann. In effect, plaintiff is arguing that Kalbhen's motives in procuring the photograph of the license plate and forwarding it to Beermann had nothing to do with the litigation but only with her "prurient" interest in whether Carl was

engaging in sex with plaintiff. However, Kalbhen's motives underlying her conduct are irrelevant for determining whether the absolute litigation privilege applies (see *Bedin*, 2021 IL App (1st) 190723, ¶ 40); the only requirement for application of the privilege is that the conduct pertained to the divorce litigation. *Scarpellli*, 2018 IL App (1st) 170874, ¶ 19. As discussed extensively above, Kalbhen's conduct pertained to the divorce litigation and is protected by the privilege. Accordingly, we affirm the grant of summary judgment in favor of Kalbhen on counts I and II.

¶ 25    Next, we address whether the circuit court correctly determined that the absolute litigation privilege protects Vantius from liability for the privacy torts alleged in counts I and II because its complained-of conduct (performing the license plate check and then investigating plaintiff and disclosing her private information in the background report) was pertinent to the divorce litigation. Plaintiff questions the applicability of the privilege to Vantius, as it is a private detective agency, not an attorney or a party to the underlying divorce litigation.

¶ 26    None of the parties have cited any Illinois state cases factually similar to the instant case, where the private detective or investigator has been sued for privacy torts allegedly committed during his investigative work on behalf of an attorney and he has asserted the absolute litigation privilege as a defense. The one state court case cited, *Goodman*, 2023 IL App (2d) 220086, ¶ 16, involved a complaint brought by the wife against her ex-husband for intentional infliction of emotional distress based on the hiring of private investigators to conduct surveillance on her. The appellate court affirmed the grant of summary judgment in favor of the ex-husband on the basis of the absolute litigation privilege, finding that the surveillance and its disclosure was pertinent to issues in the parties' underlying divorce proceedings. *Id.* ¶ 31. No suits were brought against the private investigators themselves, and thus the absolute litigation privilege was not asserted on their behalf.

¶ 27    The parties have cited one factually similar case from the federal court, *Steffes v. Stepan Co.*, No. 96 C 8225, 1997 WL 305306 (N.D. Ill. May 30, 1997). In *Steffes*, the plaintiff was employed by Stepan Company (Stepan) from 1978 through June 1996, working mostly in Stepan's maintenance warehouse. *Id.* at *1. In December 1993, Stepan placed the plaintiff on paid medical leave and never reinstated her. *Id.* The plaintiff later filed a charge with the Equal Employment Opportunity Commission alleging that Stepan discriminated against her because of her allergies and breathing difficulties. *Id.* Stepan was represented by the law firm of Seyfarth, Shaw, Fairweather & Geraldson (Seyfarth). *Id.*

¶ 28    In October 1996, the plaintiff filed answers to Seyfarth's interrogatories in the discrimination case, stating that a placement agency, First Choice Temporary Service, Inc. (First Choice) had found her employment with Dow Chemical (Dow). *Id.* Seyfarth directed Stepan's human resources manager, Charles Worden, to call Dow and ask whether the plaintiff worked there. *Id.* Worden called Dow, discovered that the plaintiff worked there, and informed Dow that the plaintiff had sued Stepan for discrimination and that she had a weight restriction and could not work near chemicals. *Id.* Dow subsequently told First Choice to inform the plaintiff not to return to work until she disclosed her medical restrictions. *Id.* The plaintiff then sued the defendants, Seyfarth, Stepan, and Worden, for retaliation and intentional interference with prospective economic advantage, alleging that as a result of Worden's actions, she was temporarily deprived of her job and that Dow will never hire her as anything other than a contractual employee through First Choice. *Id.*

¶ 29    The defendants filed a motion to dismiss. *Id.* The district court granted the motion, agreeing with Worden and Stepan's argument that the absolute litigation privilege Seyfarth would have had in communicating with Dow should be extended to Worden because he was acting as Seyfarth's

agent when he called Dow. *Id.* at \*3. In so ruling, the court noted that "[c]ases from other jurisdictions have consistently found that investigators acting on behalf of attorneys should be accorded the same privilege as the attorneys themselves." *Id.* The court cited several cases in support including *Leavitt v. Bickerton*, 855 F. Supp. 455 (D. Mass. 1994), which we proceed to discuss.

¶ 30    In *Leavitt*, the mother of a brain-damaged child brought suit against her obstetrician for malpractice. *Id.* at 456. The mother's attorney sent a letter about the suit to the medical school where the obstetrician taught. *Id.* In turn, the obstetrician sued the mother and her attorneys for libel. *Id.* While investigating the libel case, a private investigator working for the obstetrician's attorney spoke with the mother's former employers and implied to them that the child's brain damage was caused by the mother's alcohol use during her pregnancy. *Id.* The mother sued the obstetrician's attorney and the investigator for defamation and intentional infliction of emotional distress. *Id.*

¶ 31    The investigator moved to dismiss the counts against him, arguing that the allegedly defamatory statements were absolutely privileged as they were made in the course of the underlying litigation. *Id.* The district court agreed and granted the dismissal motion, stating:

"[I]t is of little significance that the statements made to [the mother's] former employers were made by a private investigator and not by an attorney. The privilege conferred upon attorneys relates to their function as an advocate on behalf of their client, as is evidenced by the requirement that statements be made in the context of pending or ongoing litigation. [Citation.] Thus, insofar as [the investigator] was engaged in a function which would be protected had it been undertaken by an attorney, he is entitled to absolute immunity while acting as an agent of an attorney." *Id.* at 458.

¶ 32    We agree with *Leavitt* and with *Steffes* that when an investigator is performing his investigative work on behalf of and as an agent of an attorney, the investigator is entitled to the same absolute litigation privilege as that enjoyed by the attorney. The purpose of the privilege is to provide attorneys with the " 'utmost freedom in their efforts to secure justice for their clients' " (*Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 701-02 (2000) (quoting Restatement (Second) of Torts § 586 cmt. a, at 247 (1977)), to further their ability to fully and fearlessly communicate with their clients, and to promote the free flow of truthful information to the courts. *Scarpelli*, 2018 IL App (1st) 170874, ¶ 17. These purposes would be undermined if the investigator retained by the attorney to investigate his client's claims was subject to liability for the statements made and/or the conduct performed in furtherance of that investigation; the threat of such liability could potentially inhibit the investigator in his work and dissuade him from fully communicating with the attorney, thereby disrupting the attorney's ability to fully communicate with and secure justice for his client, as well as hampering the free flow of truthful information to the courts. The extension of the privilege to an investigator working as an agent of an attorney is in accord with the principles underlying the privilege and is consistent with case law which has similarly extended and "modernized" the privilege. *Id.* ¶¶ 20, 25 (discussing how the privilege has been modernized and extended to various out-of-court communications not originally intended, as well as to causes of action outside of defamation, and to conduct beyond mere communications). We emphasize that the privilege accorded to investigators is the exact same one enjoyed by attorneys during the course of litigation, requiring that the investigator's communications and conduct pertain to the litigation in order for the privilege to apply.

¶ 33    Plaintiff argues that Vantius should not be deemed to have been retained by or acting as an agent on behalf of Beermann at the time it checked the license plate and prepared the background

report because it "undertook its intrusive investigations gratuitously, without any formal engagement, and with the sole purpose of currying favor with Beermann." Plaintiff's argument is belied by Sergio and Boland, each of whom testified to how Boland expressly retained Vantius on behalf of Beermann to investigate plaintiff and prepare a background report on her in connection with the underlying divorce litigation. They further explained that given the long-standing relationship between Beermann and Vantius and the relatively short amount of time needed to complete the investigation, no formal written agreement was entered into and no payment received. Sergio explained that such an arrangement was not unusual and that despite the lack of a written agreement and payment, Vantius only performed the investigative work at Boland's express direction and as part of its relationship with Beermann. Sergio and Boland's testimony make clear that Vantius was acting on behalf of Beermann and as its agent for purposes of the requested investigative work.

¶ 34    Plaintiff argues, though, that neither Boland nor anyone else at Beermann ever informed Sergio about the underlying divorce case and the suspicion that plaintiff was Carl's paramour, leaving Sergio unaware as to why Vantius was being asked to prepare the background report on plaintiff. Plaintiff contends that Beermann's failure to inform Sergio of the divorce litigation and the nature and scope of the allegations and claims therein indicates that Beermann never formally retained Vantius or entered into a principal-agent relationship with it. Again, plaintiff's argument is belied by Sergio and Boland's testimony regarding how Beermann expressly retained Vantius to run the check on plaintiff's license plate and prepare the background report on her. Also, the report itself is captioned "IRMO Kalbhen," indicating that in fact Sergio *was* made aware of the report's intended use in an underlying divorce proceeding.

¶ 35    Turning to an examination of Vantius's work in this case, the purpose of its check of the license plate was to determine the owner of the vehicle, who was suspected of being Carl's paramour. Once plaintiff was identified as the vehicle's owner, Vantius prepared the background report on her to facilitate the investigation into whether Carl was dissipating assets and whether plaintiff was a source of income for Carl, all of which would affect the court's distribution of assets under section 503 of the Marriage Act. As such, Vantius's check of the license plate and the preparation of the background report was pertinent to the divorce litigation. Therefore, the absolute litigation privilege protects Vantius from liability under counts I and II.

¶ 36    Plaintiff argues, though, that the background report prepared by Vantius was not pertinent to any dissipation claims in the underlying divorce litigation, as the report provided "all-encompassing and egregiously intrusive analyses of Plaintiff's private and personally identifiable information *** over a span of at least 35 years." Plaintiff contends that the 35-year span of the report makes it irrelevant to any dissipation claim, as the  Marriage Act expressly provides that "no dissipation shall be deemed to have occurred *** prior to 5 years before the filing of the petition for dissolution of marriage." 750 ILCS 5/503(d)(2)(iv) (West 2020).

¶ 37    Plaintiff misconstrues the nature of the report. The report itself was not intended to show whether Carl was dissipating assets by spending marital funds on plaintiff, but rather to provide background information on plaintiff that would facilitate *further investigation* into the dissipation claim as well into any financial entanglement between Carl and plaintiff (such as shared bank accounts, vehicles, real estate, or businesses) affecting the distribution of marital assets. The report provided Beermann with certain identifying information about plaintiff, including her date of birth and social security number, from which it could distinguish her from other persons with the same name, and also provided addresses to serve her with subpoenas and disclosed details regarding her

businesses, vehicles, and properties going back many years. From all this information, Beermann then could conduct further discovery into the level of any financial entanglement between plaintiff and Carl, as well as whether Carl had been dissipating marital assets within the last five years by transferring them to her bank accounts or distributing them to her businesses identified in the report. Clearly, then, the report was pertinent to the divorce litigation and was protected under the absolute litigation privilege.

¶ 38    Plaintiff focuses much of her argument on the report's disclosure of her social security number, contending that the privilege does not apply to the disclosure of such private information unrelated to the underlying divorce litigation. As discussed, though, plaintiff's social security number was pertinent to identify and distinguish her from other persons with the same name; further, Boland, Meyers, and Sergio testified that plaintiff's social security number was provided because it could be used in subpoenaing her bank records, which were relevant to determining the level of her financial entanglement with Carl as well as whether he had dissipated any marital assets by transferring them to her accounts. Given the pertinence of plaintiff's social security number in Beermann's investigation of the dissipation claim and of her financial entanglement with Carl, its disclosure in the report was protected by the privilege.

¶ 39    Plaintiff argues that applying the absolute litigation privilege in this case would "eviscerate the privacy rights of innocent third parties who just happen to come across the radar of overzealous private investigators and litigants who want to pry into every facet of those third parties' protected personal information." Plaintiff contends that this "astonishing precedent would run head-first into the expanding statutory and common-law protections of individuals' privacy rights."

¶ 40    In support, plaintiff cites the Personal Information Protection Act (Information Act) (815 ILCS 530/10 (West 2020)), which provides that any "data collector that owns or licenses personal

information concerning an Illinois resident shall notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach." The Information Act also requires any data collector to "implement and maintain reasonable security measures to protect those records [containing personal information] from unauthorized access, acquisition, destruction, use, modification, or disclosure." *Id.* § 45(a). Plaintiff also cites *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 24, which analyzed the Information Act and held that the Aon Corporation had a common-law duty to protect the personal information of its clients in addition to its duty under the Information Act.

¶ 41    Plaintiff contends we should analyze the absolute litigation privilege through the "new prism" of the Information Act and *Flores*, which has elevated and provided new protections for individuals' privacy rights, and hold that defendants here "should not be protected in their unbridled investigations into 35 years of highly sensitive private information of an innocent third party." Initially, we note that the Information Act is not a "new prism," as several cases addressing the privilege have been decided subsequent to its enactment, none of which held that the privilege is affected by the protections. See, *e.g.*, *Goodman*, 2023 IL App (2d) 220086; *Bedin*, 2021 IL App (1st) 190723. Further, the privilege itself prevents "unbridled investigations" into "highly sensitive private information," as it only protects communications and conduct pertinent to proposed or pending litigation. See *Scarpelli*, 2018 IL App (1st) 170874, ¶ 19. The information detailed here in the background report prepared by Vantius was pertinent to the underlying divorce litigation and thus protected by the privilege and its disclosure to Beermann does not run afoul of any requirements of the Information Act. We affirm the grant of summary judgment for Vantius on counts I and II.

¶ 42    Plaintiff argues, though, that the order granting summary judgment for both defendants on counts I and II should be reversed because the circuit court erred by deciding that the absolute litigation privilege applied "without any meaningful determination of any connection between the [i]nvestigations and the divorce proceeding." Plaintiff contends that the court applied an incorrect standard by analyzing whether the information disclosed in the license plate check and in the background report had been disseminated to parties unrelated to the litigation, which "has nothing to do with the absolute litigation privilege and pertains at most to the elements of certain of Plaintiff's causes of action [for invasion of privacy]." Plaintiff asserts that the court instead should have focused on whether the disclosed information pertained to the underlying divorce litigation, as required for a determination that the privilege applied in the first instance.

¶ 43    Review of the summary judgment hearing shows that although the court discussed whether the information contained in the report had been disseminated to unrelated third parties, it specifically found that the absolute litigation privilege applied to Kalbhen and Vantius because their complained-of conduct and communications pertained to the underlying divorce litigation. Specifically, the court stated with regard to Kalbhen:

> "[T]he issue with respect to Janet Kalbhen is that she, in fact, had her friend take a photo of [plaintiff's] license plate. The evidence establishes to me that the intent and purpose of that was, at least in part, to obtain the identity of and identify this witness for purposes of her divorce proceeding against Mr. Kalbhen. *** I do find that that action would be—is barred or is protected by the absolute litigation privilege. It's clear to me that that action was taken in relation to and for the furtherance of identifying who [plaintiff] was for the purposes of the underlying divorce."

¶ 44    With regard to Vantius, the court stated:

>    "The court has to look at whether [the background check] bears some relation to the litigation. *** [T]he comprehensive background check was requested by the attorneys as part of the litigation for a multitude of reasons, one of which was potentially to investigate the dissipation claim. *** The question at hand is whether the subject spouse dissipated [marital] assets to [plaintiff]. *** There is also evidence that [plaintiff] did pay some of the attorney fees. *** [T]he comprehensive background check and obtaining her identity by getting the photo of the license plate did bear some relevance and pertinency to a contentious divorce proceeding in which the question of finances is at the core of any distribution of marital property in a nonfault state like the state of Illinois. So for all of those reasons, I do find that Vantius's actions are also protected by the absolute litigation privilege."

¶ 45    On this record, the circuit court utilized the correct standard (the pertinence of the communication and conduct to the underlying litigation) for determining the applicability of the absolute litigation privilege. We find no error. Further, even if the circuit court *had* employed an incorrect standard, our result here would be the same. Our *de novo* review of the summary judgment order shows that all of defendants' complained-of conduct and communications pertained to the underlying divorce litigation and were protected by the absolute litigation privilege. Therefore, we affirm the grant of summary judgment in favor of defendants on counts I and II. See *Moore v. Pendavinji*, 2024 IL App (1st) 231305, ¶ 20 (when conducting *de novo* review, we may affirm the circuit court's judgment on any basis in the record, regardless of whether the court relied on that basis or its reasoning was correct).

¶ 46     Next, we address the grant of summary judgment for defendants on count III, which alleged that they violated the DPPA when Kalbhen (through Beermann) hired Vantius to run a check on the license plate, after which Vantius disclosed plaintiff's motor vehicle records and certain personal information contained therein, including her social security number. The court granted summary judgment for defendants on count III on the basis that the absolute litigation privilege protects them from liability for their alleged violation of the DPPA and, additionally, because defendants' disclosure of plaintiff's personal information was permissible under section 2721 of the DPPA (18 U.S.C. § 2721 (2018)).

¶ 47     On appeal, plaintiff argues that the absolute litigation privilege should not be extended to protect against liability for a statutory cause of action under the DPPA. We need not address this issue, because we affirm the grant of summary judgment on the alternative basis that, under the facts of this case, the disclosure of plaintiff's personal information was permissible under the DPPA.

¶ 48     Section 2724(a) of the DPPA (*id.* § 2724(a)) generally prohibits a person from knowingly obtaining, disclosing, or using personal information from a motor vehicle record, subject to an exception for when the disclosures are for a permitted purpose under section 2721. Section 2721 states that personal information obtained from a motor vehicle record may be disclosed for use in connection with any civil proceeding in any federal or state court (*id.* § 2721(b)(4)) and for use by "any licensed private investigative agency *** for any purpose permitted under this subsection." *Id.* § 2721(b)(8). As extensively discussed earlier in this opinion, the information obtained from plaintiff's motor vehicle records, including her identity and social security number, were properly disclosed to Beermann by Vantius, a licensed private investigative agency, for use in the

underlying divorce litigation. As such, the disclosure was for a permissible purpose under the DPPA. We affirm the grant of summary judgment for defendants on count III.

¶ 49    Finally, we address count IV, which sought injunctive relief prohibiting defendants from disseminating plaintiff's private information contained in the background report and requiring defendants to delete all such information. To be entitled to injunctive relief, plaintiff must show that she has a clear and ascertainable right that needs protecting, she will suffer irreparable harm if injunctive relief is denied, and she has no adequate remedy at law. *City of Rock Falls v. Aims Industrial Services, LLC*, 2024 IL 129164, ¶ 19. Plaintiff makes no argument on appeal that she has made the requisite showings entitling her to injunctive relief nor has she cited any case law in support thereof. The issue is forfeited. See Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). We affirm the order granting summary judgment for defendants on count IV.

¶ 50    For all the foregoing reasons, we affirm the circuit court's grant of summary judgment in favor of defendants on all four counts of plaintiff's second amended complaint.

¶ 51    Affirmed.

*Lewis v. Kalbhen*, 2025 IL App (1st) 242110

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-L-9530; the Hon. Eileen M. O'Connor, Judge, presiding. |
| **Attorneys for Appellant:** | Hillard M. Sterling and Veronica Coyne, of Roetzel & Andress, LPA, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Joshua J. Muench and Esther Joy Schwartz, of Schwartz Gilligan, of Chicago, for appellee Janet Kalbhen.<br><br>Erik J. Ives and L. Brandon Liss, of Fox Swibel Levin & Carroll LLP, of Chicago, for other appellee. |